NATIONAL ASSOCIATION OF RECYCLING INDUSTRIES, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Eastern Railroads, Eastern, Southern and Western Railroads, Intervenors.

NATIONAL ASSOCIATION OF RECYCLING INDUSTRIES, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Eastern Railroads, Intervenor.

Nos. 78–1680, 78–2074.

United States Court of Appeals, District of Columbia Circuit.

Argued 17 Dec. 1979.

Decided 25 April 1980.

Edward L. Merrigan, Washington, D. C., for petitioner.

David Popowski, Atty., I. C. C., Washington, D. C., with whom Robert G. Burk, Acting Gen. Counsel, and Frederick W. Read, III, Associate Gen. Counsel, Washington, D. C., were on the brief, for the I. C. C.

Richard J. Flynn, Washington, D. C., with whom Peter J. Vaghi, Washington, D. C., was on the brief, for intervening respondents, Aberdeen and Rockfish R. Co., et al.

Mark L. Evans and Kenneth G. Caplan, Washington, D. C., for I. C. C.

Robert Lewis Thompson, Washington, D. C., for the Dept. of Justice.

John A. Daily, Philadelphia, Pa., and Richard W. Kienle, Roanoke, Va., for intervenor Eastern Railroads.

Lee A. Monroe, Washington, D. C., for intervenor Eastern, Southern and Western Railroads.

Before WILKEY and MIKVA, Circuit Judges, and FLANNERY *, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

The two cases consolidated in this appeal involve challenges by the National Association of Recycling Industries, Inc. and others to decisions of the Interstate Commerce Commission made in general revenue proceedings, which considered proposed across-the-board rate increases for substantially all railroads in the nation or in a region. The railroads have intervened to protect their

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

interest in the rate increases approved in those proceedings. This case is closely related to another decided by us today, also captioned *National Association of Recycling Industries, Inc. v. Interstate Commerce Commission* (hereinafter *NARI II*).[1] At issue here are general revenue proceedings that affected the rate structure for rail shipment of recyclable materials; it is this rate structure which formed the subject of the Commission investigation and order reviewed by us today in *NARI II*. Because we conclude that the Commission's action in *NARI II* effectively resolves the substantive issues in the current consolidated appeals, we dismiss these petitions as moot.

### I.

On 26 September 1977 railroads nationwide filed with the Interstate Commerce Commission for authorization of a five percent general increase for rail freight rates. Following an investigation into the lawfulness of the five percent rate increase as applied to seven specific commodity groups, including recyclables, the Commission held that the railroads had failed to justify the five percent increase for recyclables and the other specific commodity groups; that is, they did not adequately justify it by increased costs for these specific freight services. Because of the railroads' revenue needs, the Commission authorized an increase of three percent on recyclables, and similar increases for the other commodities. This decision and order of the Commission, dated 28 June 1978, was designated *Ex Parte No. 343*.[2]

On 1 May 1978 the railroads petitioned the ICC for a further general rate increase, this time of four percent within and between eastern and western territories, and

two percent from, to, or within southern territory. Again the Commission selected for investigation certain specific commodities, including recyclables. In a decision and order of 16 January 1979, *Ex Parte No. 349*, the Commission found the proposed increases not justified as to certain commodities, and just and reasonable as to others.[3] Concerning recyclables, however, the Commission held its decision in abeyance pending completion of its renewed investigation upon remand in *Ex Parte No. 319* and *Ex Parte No. 319 (Sub-No. 1)*. The investigation was completed on 16 April 1979, and the ICC decision of that date is fully discussed in *NARI II* decided today. The Commission issued its new findings and order in *Ex Parte No. 319* and *Ex Parte No. 319 (Sub-No. 1)* on 16 April 1979, concluding:

> For those commodities for which we determined in this proceeding that the rates are just, reasonable, and nondiscriminatory, we conclude that the Ex Parte 349 rate increases may remain in effect. The reductions ordered for other commodities will, in effect, remove the Ex Parte 349 increases to the extent that the rates in total are unjust, unreasonable, or discriminatory.[4]

On 11 September 1978 those eastern railroads which are now intervenors in No. 78–2074 petitioned the ICC for further increases of freight rates on certain commodity groups transported within eastern territory at allegedly marginal rates of revenue. Included in this request was a proposed ten percent increase for rail shipping rates of waste paper and textile waste in this region.[5] The Commission generally authorized these proposed increases, but placed the rate increase for textile waste and waste

---

**1.** 201 U.S.App.D.C. ——, 627 F.2d 1328 and consolidated cases. To clarify, we note that "*NARI I*" denotes the case of *National Association of Recycling Industries, Inc. v. I. C. C.*, 585 F.2d 522 (D.C.Cir.1978), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 485 (1979), which is discussed in our *NARI II* opinion of today but is not directly relevant to the case before us here (*NARI III*).

**2.** *Nationwide Increased Freight Rates and Charges, 1977*, 359 I.C.C. 312 (1978).

**3.** *Increased Freight Rates and Charges, 1978, Nationwide*, 359 I.C.C. 821 (1979).

**4.** *Ex Parte No. 319, Investigation of Freight Rates for the Transportation of Recyclables or Recycled Commodities*, 316 I.C.C. 238, 277 (1979).

**5.** *See Ex Parte No. 349 (Sub-No. 1), Increased Freight Rates and Charges, 1978, Nationwide*, 17 Oct. 1978, at 1–5, Joint Appendix (J.A.) at 261–65.

paper under investigation to determine if the increase was justified by cost and revenue considerations. While this investigation was pending, the challenged increases were allowed to go into effect.[6]

On 18 May 1979 the Commission rendered a decision in this investigation, *Ex Parte No. 349 (Sub-No. 1)*, concluding that the proposed rates for these two recyclable products were nondiscriminatory and reasonable, and that they were justified by the railroads' need for revenue.[7] The Commission referred to its 16 April 1979 decision on remand in *Ex Parte No. 319*, which had found rates for waste paper and textile waste in the east to be reasonable. Since the *Ex Parte No. 319* investigation on remand considered rates as of a date after the *Ex Parte No. 349 (Sub-No. 1)* increase had gone into effect, the Commission found that *Ex Parte No. 319* had adequately explored the lawfulness of challenged rates for wastepaper and textile waste.[8]

## II.

Petitioner National Association of Recycling Industries (NARI) now seeks review of these three general revenue proceedings on grounds that they were arbitrary and capricious, inconsistent with the Railroad Revitalization and Regulatory Reform Act of 1976,[9] and not in compliance with the National Environmental Policy Act. Respondents and intervenors argue that these decisions are not reviewable at this time because petitioner has not exhausted other remedies available before the ICC for claims of unjust or unreasonable rates.

■ When the ICC approves an across-the-board rate increase in a general revenue proceeding, courts will generally not review challenges based on the alleged unreasonable or discriminatory effect of the increase as applied to particular commodities. The rationale for this limitation on review is that the Commission normally limits general revenue proceedings to the broad issue of the railroads' need for increased revenues, with the lawfulness of particular rates withheld until a petitioner challenges particular rates under 49 U.S.C. § 11701 (formerly section 13(1)). In such a challenge the petitioner bears the burden of proving the challenged rates to be unreasonable or unjustly discriminatory, while in a general revenue proceeding the railroads have the burden to show that revenue needs justify the increases. The section 11701 and 11704 avenue of challenge constitutes an administrative remedy which must generally be exhausted before one can challenge the reasonableness of particular rates as affected by a general revenue proceeding. Such was our holding in *Council of Forest Industries of British Columbia v. Interstate Commerce Commission*,[10] which thoroughly explained the procedural framework involved in such proceedings.

■ In the present case, petitioners challenge general revenue proceedings based on their allegedly unreasonable and discriminatory effects on particular rates for recyclable commodities. While this type of challenge would normally be nonreviewable without prior resort to a section 11701 proceeding, petitioners rightfully point out that the general revenue proceedings in question here are significantly different from the usual. The Commission did in fact consider the effect of across-the-board increases on specific commodities, including recyclables, and required the railroads to provide cost justifications for those increases. Such facts, as we recognized in *Council of Forest Industries*, weaken the policy arguments against immediate judicial review of a general revenue proceeding as it affects particular rates.[11] Although in *Council of Forest Industries* we found the particular circumstances of the case not to warrant immediate review,[12] it is not entirely

---

6. *See id.*

7. *See Ex Parte No. 349 (Sub-No. 1)*, 18 May 1979, at 22–24, J.A. at 445–47.

8. *See id.*

9. Pub.L.No.94–210, 90 Stat. 40 (1976).

10. 570 F.2d 1056 (D.C.Cir.1978).

11. *See id.* at 1063.

12. *See id.* at 1064.

clear in the present case whether *Council of Forest Industries* controls.

We do not find it necessary to decide this issue, however, because the Commission's *Ex Parte No. 319* investigation upon remand includes exactly the issues pressed upon us here and affords petitioners at least as effective a remedy as they could obtain through judicial review in this case. The revenue data for *Ex Parte No. 319* on remand were updated to a level that includes all three general increases in question here.[13] That investigation examined the entire recyclables shipping rate structure for unjust discrimination and unreasonableness.

In our *NARI II* decision of today reviewing that action, we uphold the Commission's findings of unjust discrimination and order effective relief. Although we vacate the ICC's standard for reasonableness of recyclables rates, upon remand the Commission must necessarily identify and remedy such unreasonable rates as may exist. This provides a full remedy for any unreasonableness or unjust discrimination for recyclables alleged to have resulted from the three general revenue proceedings.

In fact, it is actually a more effective remedy than could be obtained through pursuit of the present action: even if we held that petitioners need not exhaust administrative remedies before challenging these proceedings, we could not expect of the ICC so full a consideration of cost factors and other transportation characteristics in a general revenue proceeding as in *Ex Parte No. 319*, because of the nonfinal and limited nature of the former.[14] If on the other hand we did require exhaustion of remedies

under section 11701, petitioners would bear the burden of proof, which rested—and still rests—on the railroads in *Ex Parte No. 319*.

One further ground for petitioner's challenge to the general revenue proceeding is properly before the court at this time: the issue of adequacy of environmental impact statements prepared in conjunction with the general revenue proceedings.[15] Although the Supreme Court has held environmental impact statements to be reviewable at this stage, it has also held that they may be limited in comprehensiveness due to the limited scope of the general revenue proceeding.[16] Without investigating the ICC's compliance with the National Environmental Policy Act in its three general revenue proceedings, we find that the Commission in *Ex Parte No. 319* on remand sufficiently considered the impact of the recyclables rate structure upon environmental factors when it reappraised the applicable environmental impact statement earlier prepared on these issues.[17] Thus the *Ex Parte No. 319* investigation on remand moots this case as to environmental issues as well as issues of unreasonableness and unjust discrimination in recyclables rates.

Since our decision today in *NARI II* provides at least as effective a remedy as petitioners could obtain through the present action, we dismiss the petitions in this case as moot.

*So ordered.*

---

**13.** *See Ex Parte No. 357*, 11 Dec. 1978, at 3, J.A. at 451; Brief for Respondent Interstate Commerce Commission at 22. Though petitioner NARI contests the ICC's mootness argument, it nowhere contests that the three general increases challenged here were included in the rate structure that the Commission investigated in *Ex Parte No. 319* on remand. *See* Reply Brief for Petitioner at 20–24.

**14.** *See Aberdeen & Rockfish R. R. v. Students Challenging Regulatory Agency Procedures*, 422 U.S. 289, 322–23, 95 S.Ct. 2336, 2356–57, 45 L.Ed.2d 191 (1975).

**15.** *See id.* at 317–19, 95 S.Ct. at 2354–55; *Council of Forest Industries v. ICC*, 570 F.2d at 1061–62.

**16.** *See Aberdeen & Rockfish R. R. v. Students Challenging Regulatory Agency Procedures*, 422 U.S. at 322–23, 95 S.Ct. at 2356–57. *See also Council of Forest Industries v. ICC*, 570 F.2d at 1061–62.

**17.** *See Office of Policy and Analysis, Section of Energy and Environment, Reappraisal of the Environmental Impact Statement for Ex Parte No. 319* (ICC April 1979), J.A. at 1774–99.